Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4084 | **DATE** | 8/31/2000 |
| **CASE TITLE** | SHANOFF vs. ILLINOIS DEPT. OF HUMAN SERVICES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. This case is dismissed in its entirety. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 01 2000 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING 00 AUG 32 AM 7:44 | 8/31/2000 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| | JS  courtroom deputy's initials | | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH M. SHANOFF, )
)
Plaintiff, )
)
v. ) No. 99 CV 4084
)
ILLINOIS DEPARTMENT OF )
HUMAN SERVICES, )
)
Defendant. )
)

MEMORANDUM OPINION AND ORDER

DOCKETED
SEP 0 1 2000

JAMES F. HOLDERMAN, District Judge:

Plaintiff Kenneth M. Shanoff ("Shanoff") filed this action against his former employer defendant Illinois Department of Human Services ("IDHS"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.. Shanoff claims IDHS discriminated against him on the account of his race, white, and religion, Jewish. IDHS has now filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, IDHS's motion for summary judgment is GRANTED.

STATEMENT OF FACTS[1]

Shanoff began working for IDHS in 1995 as a Staff Development and Training Coordinator for the Department of Public Service at the John Madden Mental Health Center ("Madden"). In July

---

[1] The following statement of facts comes from the parties' Local Rule 56.1(a) and (b) statements of material facts and accompanying exhibits.

1

of 1996, Sylvia Riperton-Lewis ("Riperton-Lewis") was hired as the Quality Manager for the Department of Public Service at Madden. As part of her duties, she became direct supervisor of Shanoff. Riperton-Lewis met with Shanoff after she was hired to review his job description and discuss the functions of his job. At that meeting, Riperton-Lewis asked Shanoff what religion he practiced. Later that fall or winter, Riperton-Lewis told Shanoff he was a "haughty Jew," informed him that he didn't want her to get angry, and lunged at him with a pen. Shortly after this incident, Shanoff requested a change in supervision. No change in supervision followed.

In early 1997, Riperton-Lewis denied several requests by staff for Shanoff to do presentations and teach medical students. When Shanoff asked why she denied the requests, Riperton-Lewis responded, "I know how to put Jews in your place." On July 8, 1997, Riperton-Lewis meet with Shanoff and schedule time to regularly meet to discuss his job assignments. Riperton-Lewis allegedly made discriminatory comments concerning Shanoff's race and religion at that meeting. Shanoff became upset and slammed his office door after Riperton-Lewis left. Again, on August 4, 1997, Riperton-Lewis and Shanoff met to discuss his job assignments. Riperton-Lewis allegedly made another discriminatory comment and threatened Shanoff's physical well-being. In September of 1997, Riperton-Lewis again stated she knew how to handle white Jewish males.

At some point in November of 1997, Riperton-Lewis called Shanoff into her office and told him not to speak to anyone in leadership about any matter without her permission and that she could ruin his career. Riperton-Lewis did not make any discriminatory or harassing remarks during this conversation. In late December, Riperton-Lewis told Shanoff that he was stupid because he hadn't learned that she was protected because she was black and that she would see to it that Shanoff's "white Jewish ass would be kept down." Again in January of 1998, Riperton-Lewis made a remark

2

concerning Shanoff being white and Jewish when informing him he was to no longer teach medical students. Then, in late February or early March of 1998, Riperton-Lewis told Shanoff she knew how to handle white Jewish males and encouraged him to leave Madden.

On October 13, 1998, Shanoff filed an EEOC charge with the Illinois Department of Human Rights. Shanoff received a right-to-sue letter dated April 12, 1999. On June 18, 1999, Shanoff filed this lawsuit claiming that IDHS violated Title VII, by and through Shanoff's supervisor, who is black and non-Jewish, by discriminating against him by making disparaging remarks about his race, disparaging remarks regarding his religion, and by making physical threats against the plaintiff based on his race and religion. Shanoff also claims IDHS discriminated against him by refusing to respond to Shanoff's complaints of the alleged harassment and its refusal to counsel or discipline Shanoff's supervisor with respect to her discriminatory conduct.

IDHS has now filed this summary judgment motion, claiming it is entitled to summary judgment as a matter of law on the Title VII claim because Shanoff cannot establish a prima facie case of race or religious discrimination. IDHS further argues that Shanoff's action is time barred because Shanoff failed to file his EEOC charge within 300 days of the alleged adverse employment action. In his response to the motion, Shanoff argues that his action is really an action for hostile work environment. In reply, IDHS argues that Shanoff has not properly preserved a hostile environment harassment claim because he did not allege harassment in either his EEOC charge or his federal complaint.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

IDHS argues that this court must dismiss Shanoff's complaint because Shanoff failed to properly preserve a hostile work environment claim because such a claim is not asserted in either his EEOC Charge or his federal complaint, and therefore, Shanoff cannot now assert a hostile work environment claim. IDHS also asserts that most of the incidents that Shanoff relies upon to support his harassment claim are time-barred as they occurred more than 300 days before he filed his EEOC charge. Finally, IDHS argues that, even if Shanoff properly preserved his claim, his allegations are not severe and pervasive enough to show a hostile work environment existed.

I. Procedural Challenges of Failure to Include Claim in EEOC Charge

Before addressing the merits of the Shanoff's hostile work environment claim, this court must first consider the procedural objections raised by IDHS. IDHS claims that Shanoff's

contention of racial and religious harassment exceed the scope of his EEOC charge because he did not refer to that conduct in his charge. In addition, IDHS argues many of the alleged incidents should not be considered by this court because they are time-barred. As a general rule, a Title VII plaintiff cannot bring a claim in a lawsuit that was not included in her EEOC charge. Harper v. Godfrey Co., 45 F.3d 143, 147-48 (7th Cir. 1995). The Seventh Circuit has found a dual purpose for such a reasoning: (1) affording an opportunity for the EEOC to settle the dispute between the parties; and (2) putting the defendant on notice of the charges brought against him. Id. at 148 (citing Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992)). In other words, this is a condition precedent with which Title VII plaintiffs must adhere. Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). A Title VII plaintiff, however, "need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint" because an EEOC charge is usually completed by laypersons. Id.

The Seventh Circuit has developed a two-part test for determining whether an EEOC charge encompasses the claim in a federal district court complaint: (1) the claim is like or reasonably related to the EEOC charge, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges. Harper, 45 F.3d at 148. Turning to the first prong, the Seventh Circuit has stated that "a claim of [] discrimination in an EEOC charge and a claim of [] discrimination in a complaint are not alike or reasonably related just because they both assert forms of [] discrimination." Cheek, 31 F.3d at 501. Therefore, an EEOC charge and the complaint, at a minimum, must describe the same conduct and implicate the same individuals. Id. (citing a number of cases finding claim was not preserved for failure to adhere to general rule).

In determining whether Shanoff's allegations of race and religious harassment are to be

5

considered, this court first examined the factual allegations and time period set out in the body of Shanoff's EEOC charge. Id. In his EEOC charge, Shanoff alleged that he was discriminated against on account of his race, Caucasian, and his religion, Jewish, by his supervisor, Riperton-Lewis. Shanoff alleged that he was discriminated against when he was subjected to discriminatory and disparaging remarks by Riperton-Lewis. Shanoff also alleges that Riperton-Lewis physically threatened him. On his EEOC charge, Shanoff checked the race and religion discrimination cause box and stated that the date the most recent or continuing discrimination took place on October 9, 1998. Shanoff's federal district court complaint contain allegations of incidents of what appears to be hostile work environment claims which allegedly occurred since Riperton-Lewis began supervising Shanoff.

This court will only consider the allegations which are alleged or related to the allegations in the EEOC charge. IDHS claim that because Shanoff does not use the words "harass" or "harassment" anywhere in his EEOC charge, Shanoff failed to properly preserve his hostile work environment claim. Shanoff's EEOC charge does, however, describe conduct that is reasonably related to a hostile work environment discrimination claim. This court does not expect most plaintiffs to artfully draft an EEOC charge without counsel to them. See Rush, 966 F.2d at 1111. Even still, Shanoff's EEOC charge has described the conduct he considered to be harassment with the necessary degree of specificity. Id. Shanoff's EEOC charge and his federal complaint can be liberally construed to show a claim for hostile work environment.

Still, this court will only consider allegations which are timely filed with the EEOC. Thus, any action based on the alleged events which occurred prior to December of 1997, the 180-day

EEOC filing deadline and the 300-day Illinois filing deadline, is time-barred under Title VII.[2] Shanoff admits that he first suspected that he was a victim of discrimination at Madden in the summer of 1996, when he met with Riperton-Lewis. Moreover, Shanoff claims that he considered filing an EEOC charge as early as 1997, but Shanoff's EEOC charge was not filed until October 13, 1998. Therefore, this court will only consider the alleged incidents of harassment which occurred after December of 1997.

In conclusion, this court finds that Shanoff's EEOC charge and federal complaint sufficiently preserved a hostile work environment claim. However, many of the incidents which allegedly occurred are not properly before this court because they fall outside the 300-day statute of limitations under Title VII and are time-barred. Therefore, the court can only consider the incidents of harassment that happened after December of 1997.

II. Hostile Work Environment Claim

Shanoff alleges that IDHS, through his supervisor at IDHS, Riperton-Lewis, created a hostile working environment in violation of Title VII by her comments and actions toward him. To establish the elements of a claim for hostile environment under Title VII, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of victim's employment and create an abusive working environment.'" Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993) (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 65-67, 106 S.Ct. 2399, 2405 (1986)). In

---

[2] Under the applicable federal statute, a plaintiff has 180 days to file his or her claim, unless the forum state has an administrative agency to which the EEOC defers. 42 U.S.C. § 2000e-5(e). Illinois has such an agency, the Illinois Department of Human Rights, bringing the time limit to file a charge to 300 days. Speer v. Rand McNally & Co., 123 F.3d 658, 662 n.1 (7th Cir. 1997).

Harris, the Supreme Court stated that "'a mere utterance of an epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII." Id. (quoting Meritor, 477 U.S. at 67, 106 S.Ct. at 2405).

To determine whether a plaintiff's work environment is sufficiently hostile to violate Title VII, a court may consider a variety of factors including "the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. In order for there to be a Title VII violation, the misconduct must be severe enough to create an objectively hostile environment and the victim must subjectively perceive the misconduct as pervasive. Id. at 21-22. A court must focus on the totality of the circumstances and no one single factor is required. Dey v. Colt Const. & Development Co., 28 F.3d 1446, 1453 (7th Cir. 1994). Nevertheless, the harassment must be "extreme." Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2284 (1998). "It is not enough that a supervisor or coworker fails to treat a[n] employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor. Such failures are too commonplace in today's America, regardless of the sex of the employee, to be classified as discriminatory." Minor v. Ivy Tech State College, 174 F.3d 855, 858 (7th Cir. 1999).

In determining the pervasiveness of a hostile work environment, the Seventh Circuit has emphasized the frequency of misconduct. While there is no "magic number" of incidents that gives rise to a cause of action, Doe v. R.R. Donnelly & Sons Co., 42 F.3d 439, 445 (7th Cir. 1994), a consistent pattern of complaints, Dey, 28 F.3d at 1456, or the repetition of offensive acts, Brooms v. Regal Tube Co., 881 F.2d 412, 420 (7th Cir. 1989), is strong evidence of a hostile work environment, particularly when the misconduct continues despite the victim's objections. Saxton

8

v. A.T. & T Co., 10 F.3d 526, 534 (7th Cir. 1993). A couple incidents of misconduct by a supervisor involving inappropriate remarks, however, does not create a hostile work environment. Id. at 533-34; see also Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993). Regardless, the plaintiff bears the burden of showing that she or he was personally disadvantaged in the conditions of his or her employment. Id. The fact of the matter is that "Title VII is not directed against unpleasantness per se but only, . . . against discrimination in the conditions of employment." Carr v. Allison Gas Turbine Div. Gen. Motors Corp., 32 F.3d 1007, 1009 (7th Cir. 1994).

In support of his hostile work environment claim, Shanoff claims that IDHS, through his supervisor, subjected Shanoff to uninvited remarks about his religion and race. Specifically, Shanoff alleges that in late December 1997, Riperton-Lewis stated that the black director of IDHS would protect Riperton-Lewis and that she would see to it that Shanoff's white-Jewish ass would be kept-down. Shanoff also claims that in January of 1998, Riperton-Lewis "made a remark concerning his being white and Jewish." Yet, Shanoff does not provide any specifics of the remark. Finally, Shanoff claims that in late February or early March of 1998, Riperton-Lewis stated that she knew how to "handle white Jewish males" and that he should leave IDHS and "get out of her hair."

Turning to the merits of Shanoff's claim, after reviewing all the evidence submitted by Shanoff on his hostile work environment, this court cannot say, even in drawing all reasonable inferences of facts in favor of Shanoff, that the alleged conduct was so severe and pervasive to amount to the existence of a objectively hostile work environment. The conduct allegedly committed by Riperton-Lewis was fairly sporadic, as opposed to pervasive. There were a total of three comments made that were directed at Shanoff. These three comments over 10 months were not frequent enough to create a hostile work environment. See McKenzie v. Illinois Dep't of Transp.,

92 F.3d 473, 480 (7th Cir. 1996) (finding three offensive comments did not rise to a level of unreasonably interfering with the work environment); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995) (finding nine mildly suggestive comments over seven months did not create a hostile work environment).

In addition, the comments allegedly made are not even severe enough or physically threatening to rise to a level of a hostile work environment claim. See Vollmert v. Wisconsin Dep't of Transp., 197 F.3d 297 (7th Cir. 1999); Cowan v. Prudential Ins. Co. of America, 141 F.3d 751, 758 (7th Cir. 1998). Riperton-Lewis referred to Shanoff as a white Jewish male, but never made any anti-semitic remarks or racial slurs towards Shanoff. Moreover, Shanoff was never exposed to any anti-semitic or racially derogatory materials. Finally, there is no evidence before the court which indicates being called a white Jewish male ridiculed or humiliated Shanoff or would even ridicule or humiliate a reasonably objective person. While Riperton-Lewis' remarks to Shanoff as a white Jewish male may be inappropriate for the workplace, they do not rise to the level of a hostile work environment claim because they are not sufficiently severe to rise to the level of being "extreme." Thus, merely because Shanoff's supervisor failed to treat him with sensitivity or tact, and used inappropriate language on a few occasions and Shanoff found this environment to be unpleasant, it is not discriminatory or hostile under the statute.[3] Minor, 174 F.3d at 858.

Consequently, because Shanoff has failed to present sufficient evidence to raise a genuine

---

[3] Even if this court were to consider the alleged incidents of harassment dating back to when Riperton-Lewis first began at Madden, Shanoff's claim fails as a matter of law. In total, Shanoff alleges nine separate mild comments over a two and one-half year period. In fact, Shanoff can not even recall the exact comments made during several of the alleged incidents. Thus, even looking at the totality of the circumstances, these comments may have been inappropriate, but the comments were not sufficiently severe or pervasive enough to alter Shanoff's conditions of employment.

issue of material fact on his religious and race harassment claims, this court must grant IDHS's motion for summary judgment. Thus, IDHS's motion for summary judgment as to Shanoff's claim of hostile work environment is granted.

## CONCLUSION

For the above stated reasons, defendant Illinois Department of Human Services' motion for summary judgment is GRANTED. This court dismisses plaintiff Kenneth Shanoff's complaint. This case is dismissed in its entirety. All other pending motions are moot.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: August 31, 2000